UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUCY REYNOLDS,<br><br>    Plaintiff,<br><br> v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>    Defendant. | C21-1424 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on cross-motions under Federal Rule of Civil Procedure 52, docket nos. 69 & 70.[1] Having reviewed the cross-motions and responses, as well as the Administrative Record ("AR"), docket nos. 63–68 & 79, the Court enters the following Order.

**Background**

Plaintiff Lucy Reynolds was born in 1976. AR 178. In 2003, Plaintiff earned a Ph.D. in medical physics from the University of London and began working in genetic

---

[1] The parties have elected to proceed pursuant to Rule 52. *See, e.g., Minton v. Deloitte & Touche USA LLP Plan*, 631 F. Supp. 1213, 1218 (N.D. Cal. 2009) ("Under Rule 52, the court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true." (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999))).

ORDER - 1

counseling as a bioinformatics engineer. AR 823. In March 2006, Plaintiff began working for Affymetrix[2] as a "Bioinformatics Engineer 3." AR 1872. Plaintiff's employment with Affymetrix ended on November 20, 2015. AR 274 & 325.

**A.     The Policy**

During Plaintiff's employment, Affymetrix was a participant in an employee benefit plan (the "Policy") issued by Defendant Life Insurance Company of North America ("LINA").[3] AR 1–28. The Policy is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and provides for both short term disability ("STD") and long term disability ("LTD") benefits. *Id.* The Policy distinguishes between STD benefits (for the first six months) and LTD benefits (after the first six months) as follows:

> **Gross Disability Benefit**
> For the first 6 months of Disability, the lesser of 60% of an Employee's weekly Covered Earnings rounded to the nearest dollar or the Maximum Weekly Benefit.
>
> After the first 6 months of Disability, the lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Monthly Benefit.

AR 6. The Policy also contains the following provision:

---

[2] Affymetrix is also referred to by Plaintiff as Insperity Holdings, Inc. Pl.'s Mot. at 5 (docket no. 70). According to Defendant, Insperity Holdings, Inc. provides human resources and benefit services to employers but is not otherwise related to Affymetrix, Def.'s Resp. at 4 (docket no. 72), and Affymetrix is now known as Applied Biosystems, Def.'s Mot. at 2 n.2 (docket no 69).

[3] Some documents in the Administrative Record refer to Cigna. In December 2020, LINA's parent company, New York Life Insurance Company, acquired LINA from Cigna Corporation. Def.'s Mot. at 1 n.1 (docket no. 69).

ORDER - 2

> **Disability Benefits**
> The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy.  The Employee must satisfy the Elimination Period,[4] be under the Appropriate Care of a Physician, and meet all other terms and conditions of the Policy.  He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid.  The Disability Benefit is shown in the Schedule of Benefits.
>
> The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

AR 11.  For purposes of STD benefits, the Policy defines "Disabled" or "Disability" to mean an injury or sickness that renders an employee "unable to perform the material duties of his or her Regular Occupation" or "unable to perform 80% or more of his or her Indexed Earnings from working his or her Regular Occupation."[5]  AR 6.  The standard for LTD benefits is the same initially, but after disability benefits have been payable for 30 months, it requires that the applicant be prevented from working "any occupation." *Id.*  The Policy "require[s] proof of earnings and continued Disability." *Id.*  In addition, the Policy contains an "Other Income Benefits" provision, which allows LINA to reduce the benefits it pays if the insured receives benefits from another source, including social security disability benefits.  AR 13.  The Policy also states that proof of loss "must be given to the Insurance Company within 90 days after the date of the loss for which a

---

[4] The Elimination Period, which "is the period of time an Employee must be continuously Disabled before Disability Benefits are payable," is fourteen days for accident and fourteen days for sickness.  AR 6 & 11.

[5] The Policy defines "Regular Occupation" as follows:  "The occupation the Employee routinely performs at the time the Disability begins.  In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.  It is not work tasks that are performed for a specific employer or at a specific location."  AR 24.

ORDER - 3

claim is made." AR 19.  The Policy appoints "the Insurance Company as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims."  AR 25.

**B.     Plaintiff's Medical History/Records**

In 2012, Plaintiff was diagnosed with multiple sclerosis ("MS").[6]  AR 6925, 6928, & 8704.  According to Plaintiff, she was also diagnosed with depression in 2005,[7] anxiety in 2012,[8] and post-traumatic stress disorder ("PTSD") in 2017.  AR 822.  Plaintiff has further reported being diagnosed with fibromyalgia, migraine headaches, asthma, and hypothyroidism.[9]  Id.

In support of her claim for STD and LTD benefits, Plaintiff provided to LINA medical information documenting the treatment she received for her numerous ailments.  From April to September 2015, Plaintiff visited Keck Medicine at the USC Department of Neurology.  AR 444–512.  From February to October 2017, Plaintiff was treated at the Swedish Medical Center.  AR 552–79.  From March 2017 to January 2018, Plaintiff was treated at Peak Sports & Spine Physical Therapy.  AR 580–678.  From January 2017 to

---

[6] LINA does not dispute that Plaintiff was diagnosed with MS in 2012.  Def.'s Resp. at 17 (docket no. 72).

[7] LINA acknowledges that "Plaintiff has a history [of] depression dating back to 2005."  Def.'s Resp. at 5 (docket no. 72).

[8] Although Plaintiff reported having been diagnosed with anxiety in 2012, the Administrative Record indicates that Plaintiff was diagnosed with anxiety in 2018.  AR 3650.

[9] LINA does not dispute that Plaintiff was diagnosed with numerous ailments.  Instead, LINA argues that Plaintiff produced medical evidence reflecting her conditions only years after she left Affymetrix and did not provide sufficient evidence that she was disabled during the relevant time period.  Def.'s Mot. at 9 (docket no. 69).

ORDER - 4

February 2018, Plaintiff was treated at Overlake Medical Clinic. AR 679–812. From January 2018 to February 2019, Plaintiff was treated by Pemberly Vander Linden, LMFT. AR 813–20. In May 2018, Plaintiff was treated by David M. Dixon, Ph.D. AR 821–29. In April 2019, Plaintiff was treated by Kent Ta, M.D. AR 513–21.

C.  **Social Security Disability Benefits**

On January 14, 2018, Plaintiff applied for social security disability insurance ("SSDI") benefits. AR 1859–74. Plaintiff's alleged onset date was January 25, 2018. AR 1861. The Social Security Administration ("SSA") issued a Disability Report on February 2, 2018. AR 1963. The Disability Report includes Plaintiff's remarks indicating that she took three months of short-term disability, in or around January 2014, while still employed by Affymetrix. AR 1980. Plaintiff subsequently asked Affymetrix for her hours to be reduced from full time to thirty hours per week due to energy, pain, and anxiety issues caused by fibromyalgia, MS, PTSD, anxiety, and depression. *Id.* Despite receiving the requested reduction in hours, Plaintiff stopped working for Affymetrix in November 2015 due to the high-stress environment and fatigue. *Id.*

Plaintiff's remarks within the Disability Report further reflect that Plaintiff did not work or claim benefits for one year as she worked to improve her mental and physical health. AR 1980. Plaintiff, however, espoused a belief that she could no longer perform the duties required for her previous career or perform work that required constant mental focus. *Id.* Thus, in November 2016, Plaintiff started teaching and working at Nifty Knitters, a yarn shop. *Id.*; AR 1354 & 1872. Plaintiff worked at Nifty Knitters for fourteen months but her mental and physical health continued to deteriorate. AR 1980.

ORDER - 5

Plaintiff reported that she could no longer work due to anxiety and PTSD symptoms caused by noise and stimuli of a full shop with multiple customers and fatigue resulting from MS and fibromyalgia.  *Id.*  In addition, Plaintiff's carpel tunnel syndrome, in addition to the pain from fibromyalgia and arthritis in her back, prevented her from performing necessary functions such as standing or teaching.  *Id.*  Plaintiff also reported that her conditions left her with multiple bacterial and respiratory infections, which required antibiotics from December 2016 to November 2017.  *Id.*  Although Plaintiff reduced her hours to try and manage these outcomes, doing so had no effect on her mental and physical health, and Plaintiff reported that she remains unable to work.  *Id.*

On June 5, 2018, the SSA determined that Plaintiff was not disabled.  AR 1873.  Plaintiff sought reconsideration of the SSA's determination, AR 1875–91, but the SSA again determined that Plaintiff was not disabled, AR 1890.  Plaintiff appealed the decision and amended her alleged onset date of disability to January 1, 2016.  AR 3703–07.  After a hearing, an Administrative Law Judge ("ALJ") found that Plaintiff had not performed substantial gainful activity since January 1, 2016.  AR 3703.  The ALJ noted that Plaintiff had the following severe impairments:  MS, fibromyalgia, migraines, depression, anxiety, PTSD, right hand carpal tunnel syndrome, left ankle degenerative joint disorder, asthma, and thyroid disease.  AR 3703–04.  The ALJ further found that Plaintiff was unable to perform any past relevant work, and that Plaintiff's acquired job skills do not transfer to other occupations within her residual functional capacity.  AR 3706.  The ALJ determined that Plaintiff had been disabled as defined in the Social Security Act since January 1, 2016.  AR 3707.

ORDER - 6

**D.      Policy Benefits**

On or around October 7, 2019, Plaintiff initiated a claim for disability benefits with LINA. AR 83–97. Plaintiff listed October 15, 2012, as the first date she was unable to work. AR 84. LINA denied Plaintiff's claim because Plaintiff's incurred date was October 15, 2012, but the Policy was not effective until January 1, 2014. AR 100, 263–65.

On April 9, 2020, Plaintiff informed LINA that she was seeking both STD and LTD benefits. AR 274. Plaintiff explained that she was claiming disability from November 19, 2015, to the present as a result of her MS. *Id.* LINA informed Plaintiff that it received Plaintiff's appeal of her claim for STD benefits.[10] AR 276.

On May 5, 2020, LINA notified Plaintiff about the Policy's proof-of-loss provision, which requires that a claim be made within 90 days of loss, and informed Plaintiff that she was required to provide a written explanation for the late submission of her claim under the Policy. AR 278–79. Plaintiff explained that she was unaware of her right to claim benefits when she was forced to leave her job. AR 286.

On May 28, 2020, LINA informed Plaintiff that its "adverse claim determination" was overturned and that Plaintiff was "in an eligible class with a Last Day Worked of November 19, 2015." AR 295–96. In addition, LINA stated that Plaintiff "must meet all terms and conditions of the policy to qualify for benefits." AR 295. Then, on June 29,

---

[10] LINA previously informed Plaintiff's counsel that LINA would not accept a LTD benefit claim because STD benefits had not been paid to termination. AR 125.

ORDER - 7

2020, LINA reiterated that Plaintiff's claim for STD benefits was approved. AR 308. Specifically, LINA wrote that "[b]ased on the current medical information on file, Short Term Disability benefits have been approved through May 20, 2016 provided you remain disabled as defined in your policy." *Id.* LINA issued a check in the amount of $20,016.00 to Plaintiff, which represented benefits due for the period of December 5, 2015 through May 20, 2016.[11]  *Id.*

LINA received Plaintiff's claim for LTD benefits on June 9, 2020. AR 5977 & 8822. On October 6, 2020, LINA informed Plaintiff that, after a review of Plaintiff's information on file, it was unable to approve Plaintiff's claim for LTD benefits. AR 5976–81. LINA detailed its reasons for denying Plaintiff's claim, including who reviewed Plaintiff's claim, what information LINA reviewed, and how LINA considered Plaintiff's award of SSDI benefits. *Id.* Based on its review, LINA determined that Plaintiff's "symptoms were not consistent with her functional inability from a physical and psychiatric viewpoint that would preclude her from performing the essential duties of her own occupation[.]" AR 5980. LINA also explained that it was not persuaded by the SSA's disability finding because the SSA found Plaintiff was disabled as of January 2016, but Plaintiff had to satisfy the Policy's definition of disability from November 21,

---

[11] LINA noted that Plaintiff's date of disability was November 21, 2015, and that benefits commenced on December 5, 2015, following a benefit waiting period of 14 days. AR 308. LINA also noted that Plaintiff's claim would remain open through July 8, 2020, so that if Plaintiff could not have returned to work by May 21, 2016, Plaintiff would have an opportunity to send LINA medical records for consideration of further benefits. *Id.* LINA also stated that "[i]f further medical information is not received, we will assume your disability period has ended and your claim will be closed." *Id.* LINA, however, did not indicate or inform Plaintiff that her claim for benefits was approved for a different reason other than satisfying the terms of the Policy.

ORDER - 8

2015 and beyond in order to receive LTD benefits.  *Id.*  Plaintiff appealed LINA's denial of LTD benefits.  AR 3708–15.

On May 25, 2021, LINA informed Plaintiff that an adverse benefit decision on her LTD benefits claim was warranted.  AR 997–1001.  LINA retained doctors to review Plaintiff's medical records, reconsidered the SSA's disability finding, and reiterated that Plaintiff did not establish that she was disabled as defined by the Policy from November 2015 through the Policy's Elimination Period.  *Id.*  LINA subsequently upheld its decision to deny Plaintiff's claim for LTD benefits.  AR 1093–96 & 1113–17.  LINA's final appeal decision noted that Plaintiff's "medical records must demonstrate a continuous disability from the reported date of incurred disability, November 21, 2015, throughout her entire Elimination Period and continuing" in order to receive LTD benefits and that "[t]he review of [Plaintiff]'s medical records must demonstrate her inability to perform the duties of her regular occupation."[12]  AR 1114.  LINA determined that Plaintiff did not meet that standard.  AR 1113–17.  Plaintiff then initiated this case.

## Discussion

### A.    Standard of Review

The presumptive standard of review with respect to an appeal from a denial of ERISA benefits is de novo.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 1115 (1989).  The parties agree that the applicable standard of review is de novo.  Def.'s Mot.

---

[12] LINA also stated that it "used the outcome of the medical reviews to complete a vocational review which was used to determine whether or not [Plaintiff] could perform any occupation."  AR 1114.

ORDER - 9

at 8–9 (docket no. 69); Pl.'s Mot. at 7–8 (docket no. 70).  When reviewing de novo, the Court "proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits."  *Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)).

**B.    Plaintiff's Claim for LTD Benefits**

In this case, the parties dispute whether Plaintiff is entitled to LTD benefits under the Policy.  Def.'s Mot. at 1, 9 (docket no. 69); Pl.'s Mot. at 5 (docket no. 70).  Specifically, LINA argues that its motion should be granted because Plaintiff did not provide "sufficient evidence that she was disabled during the relevant time period (November 2015), but instead relies on medical records that were produced only much later, reflecting her condition years after she had left Affymetrix."  Def.'s Mot. at 9 (docket no. 69).  Plaintiff requests "past and continuing LTD benefits, pre and post judgment interest, attorney fees and costs."  Pl.'s Mot. at 8 (docket no. 70).

Plaintiff bears the burden of proving that she is entitled to LTD benefits.  *Muniz v. Amex Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant.").  Under the terms of the Policy, to prove disability and an entitlement to the first 24 months of LTD benefits, Plaintiff must show an inability to perform the material and substantial duties of her regular occupation and that she was

ORDER - 10

continuously disabled throughout the fourteen-day Elimination Period.[13]  AR 6; Def.'s Mot. at 10 (docket no. 60).  After LTD benefits have been payable for 24 months, the Policy requires the applicant to meet the same standard, but in addition, Plaintiff must show she is prevented from working "any occupation."  AR 6.  The Court addresses Plaintiff's entitlement to LTD benefits before and after 24 months.

C.     **LTD Benefits for the First 24 Months**

As an initial matter, Plaintiff's claim for STD benefits is relevant because the Policy's standard to receive STD benefits is the same as the standard for the first 24 months of LTD benefits.  *See* AR 6 & 11.  Nevertheless, LINA argues that its decision to grant Plaintiff's claim for STD benefits "has no effect on the LTD claim determination because the STD claim was never assessed on the merits of her actual physical impairments, with peer reviews assessing Plaintiff's medical impairments."  Def.'s Resp. at 3 (docket no. 72).  LINA points out that Plaintiff did not apply for benefits until nearly four years after her employment with Affymetrix ended, and that Plaintiff initially alleged she was first disabled as of October 15, 2012.  *Id.* (citing AR 84).  LINA denied Plaintiff's claim because her disability date was outside the "eligible class" for STD benefits.  *Id.* (citing AR 89).  Plaintiff, however, appealed, alleging a new disability date of November 19, 2015.  *Id.* (citing AR 274).  LINA contends that it relied on Plaintiff's new disability date and allowed STD benefits "as a stop gap measure because the new

---

[13] The Elimination Period is from November 19, 2015 through December 3, 2015.  Def.'s Resp. at 4 (docket no. 72).

ORDER - 11

disability date placed her in the 'eligible class' of employees that could qualify for the STD benefit." *Id.* LINA maintains it did not approve Plaintiff's STD benefits claim based upon independent peer reviews assessing the merits of Plaintiff's claimed impairment.[14] *Id.* (citing AR 295); *see* Def.'s Mot. at 2 (citing *Maher v. Aetna Life Ins. Co.*, 186 F. Supp. 3d 1117 (W.D. Wash. 2016)).

In *Maher*, the plaintiff was a participant in an ERISA plan as a Boeing employee. 186 F. Supp. 3d at 1121. The plaintiff suffered injuries from numerous car accidents and applied for STD benefits. *Id.* The plan administrator, Aetna Life Insurance Co. ("Aetna"), concluded that the plaintiff met the definition of disabled and granted benefits from February 3 through March 2, 2014, and "specifically noted that [the plaintiff] needed to submit additional medical evidence in order to receive benefits beyond March 2." *Id.* (citations omitted). On April 16, Aetna informed the plaintiff that it was terminating STD benefits, and Aetna subsequently denied the plaintiff's appeal. *Id.* at 1122–23 (citation omitted). The plaintiff argued Aetna's decision warranted skepticism because it initially granted STD benefits before terminating the benefits less than three months later without evidence of improvement. *Id.* at 1127. The *Maher* Court noted that "Aetna's initial grant of STD benefits made clear that those benefits were meant only to be a stopgap until [the plaintiff] was able to provide additional medical evidence as to her

---

[14] In contrast, with respect to Plaintiff's LTD benefits claim, LINA asserts that it performed a holistic review of Plaintiff's medical records and employed at least six medical specialists who all concluded that Plaintiff failed to show sufficient disabling impairment during the Elimination Period. Def.'s Resp. at 3 (docket no. 72).

ORDER - 12

disability." *Id.* (citation omitted). The *Maher* Court determined that "Aetna . . . acted reasonably by initially granting benefits in a case which might be meritorious and then terminated them once a fuller medical picture was submitted." *Id.* (footnote omitted).

Here, in contrast to *Maher*, LINA did not state or otherwise make clear that it was approving STD benefits as a "stopgap" measure, or that it had awarded STD benefits on some basis other than Plaintiff qualifying as disabled within the meaning of the Policy. Indeed, LINA did not articulate such position until its Rule 52 motion and its response to Plaintiff's cross-motion. *See* Def.'s Mot at 10 (docket no. 69); Def.'s Resp. at 3 & 7 (docket no. 72). Instead, LINA informed Plaintiff that she "was in an eligible class with a Last Day Worked of November 19, 2105" and that her claim for STD benefits was approved "[b]ased on the current medical information on file." AR 295–96, 308. In addition, Plaintiff provided her medical information to LINA when she initially applied for benefits, *see* AR 83–97; Def.'s Mot. at 4 n.4 (docket no. 69), so LINA was not waiting for a more complete medical picture. LINA's correspondence with Plaintiff therefore demonstrates that LINA approved Plaintiff's claim for STD benefits because Plaintiff satisfied the terms of the Policy. Because the Policy required Plaintiff to meet the same definition of disabled to receive the first 24 months of LTD benefits, *see* AR 6 & 11, LINA's approval of Plaintiff's claim for STD benefits must be construed as a determination that Plaintiff was disabled as defined by the Policy for purposes of the first 24 months of LTD benefits. Thus, LINA incorrectly denied Plaintiff's claim for LTD benefits on the basis that Plaintiff did not demonstrate she was disabled during the

ORDER - 13

Elimination Period, and Plaintiff is entitled to LTD benefits from May 21, 2016, through June 3, 2018.[15]

### D. LTD Benefits After 24 Months

Having concluded that Plaintiff is entitled to the first 24 months of LTD benefits, the Court clarifies Plaintiff's rights to future Policy benefits. As an initial matter, LINA does not argue that Plaintiff's medical condition has improved. Moreover, the Administrative Record supports Plaintiff's assertion that she continues to suffer from an ongoing presence of disability. For example, Plaintiff was treated for fibromyalgia by Dr. Kent Ta, a rheumatology specialist, in April 2019. AR 3247–55. Dr. Ta noted Plaintiff's symptoms included a history of widespread pain, cognitive dysfunction, frequent severe headaches, shortness of breath, dizziness, insomnia, fatigue, depression, anxiety, and bladder spasms. AR 3247. Dr. Ta further noted that Plaintiff could not even work an "easy job" because of her pain, fatigue, and cognitive dysfunction. AR 3249–50. Dr. Ta observed Plaintiff was incapable of low stress work and would likely be absent from work more than four days per month because of her impairments.[16] AR 3251.

---

[15] LINA asserts that Plaintiff executed an employment separation agreement that released any ERISA claims. Def.'s Resp. at 1–2 (docket no. 72). Plaintiff did sign a separation agreement that released any ERISA claims against Affymetrix. AR 325–29. To the extent, however, that the separation agreement also released any ERISA claims against LINA, *see* AR 326, LINA is precluded from asserting a new basis for denial of benefits. *See Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012) ("A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding.").

[16] The Court notes that LINA chose to have its medical specialists review reports of Plaintiff's medical evidence, rather than conduct its own in-person examination. As the Ninth Circuit has noted, although "the Plan does not require a physical exam by non-treating physicians, in this case that choice 'raise[s] questions about the thoroughness and accuracy of the benefits determination.'" *Montour v. Hartford Life*

ORDER - 14

Furthermore, in June 2019, the SSA found that Plaintiff's MS, fibromyalgia, migraines, depression, anxiety, PTSD, right hand carpal tunnel syndrome, left ankle degenerative joint disorder, asthma, and thyroid disease were severe impairments that "significantly limit [Plaintiff]'s ability to perform work activities on a regular and continuing basis." AR 3703–04. The SSA also found that Plaintiff was "unable to perform any past relevant work" and her "acquired job skills do not transfer to other occupations within the residual functional capacity." AR 3706. The SSA ultimately concluded that Plaintiff was disabled as defined by the Social Security Act since January 1, 2016. AR 3707. Although not dispositive, the SSA's disability finding demonstrates that Plaintiff continues to suffer from numerous impairments and that she remains disabled under the Policy. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 711 F. App'x 380, 383 (9th Cir. 2017) (observing that "SSA rulings are highly relevant to an ERISA disability determination," but concluding that the district court's error in disregarding the SSA's finding was harmless).

The Court concludes that Plaintiff has demonstrated the disabling nature of her conditions, and that Plaintiff is entitled to continuing LTD benefits under the Policy's "any occupation" standard. *See Gorena v. Aetna Life Ins. Co.*, No. C17-532, 2018 WL 3008873, at *7 (W.D. Wash. June 15, 2018) ("The Court is permitted, in accordance with 29 U.S.C. § 1132(a)(1)(B), to 'clarify [Plaintiff's] rights to future benefits under the

---

& *Accident Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (alteration in original, quoting *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 554 (6th Cir. 2008)).

ORDER - 15

terms of the plan.'" (alteration in original)). Subject to the terms and conditions of the Policy, LINA is directed to pay Plaintiff LTD benefits to the Policy's maximum benefit duration absent a showing of improvement in her medical condition such that she is no longer disabled within the meaning of the Policy. *See id.*

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    Plaintiff's motion, docket no. 70, is GRANTED, and Defendant's motion, docket no. 69, is DENIED.

(2)    Defendant is DIRECTED to approve and pay Plaintiff's long-term disability claim from May 21, 2016, to the date of this Order, subject to any set off of Plaintiff's SSDI benefits and/or income from other sources, pursuant to the "Other Income Benefits" provision of the Policy.

(3)    Defendant is DIRECTED to pay Plaintiff's long-term disability claim from the date of this Order to the end of the Policy's maximum benefit duration, subject to any set off of Plaintiff's SSDI benefits and/or income from other sources, pursuant to the "Other Income Benefits" provision of the Policy, absent a showing of improvement in Plaintiff's medical condition such that a reasonable physician would conclude that she could work in a sedentary occupation in the competitive workforce, for which she has the education, training and experience, and which she is capable of performing productively, full-time, without undue disruptions and absences due to her MS and related or other symptoms.

(4)   The Clerk is DIRECTED to enter judgment consistent with this Order and to send a copy of the Judgment and this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 6th day of October, 2023.

Thomas S. Zilly
United States District Judge