1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

LUCY REYNOLDS,

            Plaintiff,

7

8

9

        v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

            Defendant.

C21-1424 TSZ

ORDER

10

11

12

13

14

THIS MATTER comes before the Court on Plaintiff Lucy Reynolds' motion for prejudgment interest and attorney's fees, docket no. 82, and Plaintiff's motion to amend judgment, docket no. 84.  Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

15

**Background**

16

17

18

19

20

21

22

The Court has detailed the background of this case in a previous Order.  See Order (docket no. 80).  Plaintiff worked for Affymetrix until November 20, 2015.  AR 274, 325, & 1872.  During Plaintiff's employment, Affymetrix was a participant in an employee benefit plan (the "Policy") issued by Defendant Life Insurance Company of New York ("LINA").  AR 1–28.  The Policy is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and provides for both short term disability ("STD") and long term disability ("LTD") benefits.  Id.  The Policy states in relevant part:

23

1

**Definition of Covered Earnings**

2     Covered Earnings means an Employee's base annual salary or estimated
      annual earnings based on a standard hourly rate, multiplied by 2080, as

3     reported by the Employer for any work performed for the Employer as in
      effect just prior to the date Disability begins.  It includes amounts received

4     as commissions, piece work, fee based and for ordained, commissioned or
      licensed ministers only, any housing allowance paid by the Employer to the

5     Employee, whether or not such allowance is subject to federal or state income
      tax, but not bonuses, overtime pay, special pay or any other form of extra

6     compensation.  A Leave of Absence Employee's Covered Earnings will be
      his rate in effect prior to going on a Leave of Absence.

7     AR 6.

8          On or around October 7, 2019, Plaintiff initiated a claim for disability benefits

9     with LINA.  AR 83–97.  LINA eventually approved Plaintiff's claim for STD benefits

10    and issued to Plaintiff a check in the amount of $20,016.00.  AR 100, 263–65, 274, 276,

11    278–79, 286, 295–96, & 308.  LINA, however, denied Plaintiff's claim for LTD benefits.

12    AR 5976–81, 997–1001, 1093–96, & 1113–17.  Plaintiff then initiated this case, which

13    eventually came before the Court on cross-motions under Federal Rule of Civil

14    Procedure 52, docket nos. 69 & 70.  The Court entered an Order, docket no. 80, and a

15    Judgment, docket no. 81, in favor of Plaintiff.  Plaintiff then filed the pending motions.

16    **Discussion**

17    **A.    Plaintiff's Motion to Amend Judgment**

18         Plaintiff brings her motion to amend judgment under Federal Rule of Civil

19    Procedure 59(e).  Pl.'s Mot. at 2 (docket no. 84).  Although "a rule 59(e) motion is an

20    'extraordinary remedy, to be used sparingly in the interests of finality and conservation of

21    judicial resources[,]'" Wood v. Ryan, 759 F.3d 1117, 1121 (9th Cir. 2014) (citation

22    omitted), the Court "has considerable discretion when considering a motion to amend a

23

ORDER - 2

judgment under Rule 59(e), <u>Turner v. Burlington N. Santa Fe R.R. Co.</u>, 338 F.3d 1058, 1063 (9th Cir. 2003) (citations omitted).  A Rule 59(e) motion may be granted if (1) "the motion is 'necessary to correct manifest errors of law or fact upon which the judgment is based;'" (2) "the moving party presents 'newly discovered or previously unavailable evidence;'" (3) "the motion is necessary to 'prevent manifest injustice;'" or (4) "there is an 'intervening change in controlling law.'"  <u>Turner</u>, 338 F.3d at 1063 (citation and emphasis omitted).  The Court exercises its discretion to address Plaintiff's claims regarding STD and LTD benefits.

### 1.   <u>STD Benefits</u>

Plaintiff seeks an Amended Order clarifying that her STD benefits are to "be calculated based on her 2015 annual salary which represents her 'Covered Earnings' as defined by the policy."  Pl.'s Mot. at 3 (docket no. 84).  Specifically, Plaintiff maintains that her "Covered Earnings" totaled $104,524, and thus LINA underpaid her STD benefits claim.  <u>Id.</u> at 5.  As LINA points out, however, Plaintiff did not challenge the calculation of her STD benefits during the administrative process or during this litigation.  Def.'s Resp. at 3–4 (docket no. 88).  Plaintiff does not dispute that she did not challenge the calculation of her STD benefits.  <u>See</u> Pl.'s Reply (docket no. 91).  Instead, Plaintiff cites to the Court's Order, docket no. 80, where the Court stated that "Plaintiff's claim for STD benefits is relevant because the Policy's standard to receive STD benefits is the same as the standard for the first 24 months of LTD benefits."  Pl.'s Reply at 3.  The Court's Order, however, related to approving, and not calculating, Plaintiff's claim for benefits.  Thus, Plaintiff raises a new argument for the first time, and the Court declines

1  to enter an amended judgment with respect to Plaintiff's claim for STD benefits.  See

2  Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) ("A Rule 59(e) motion may not be

3  used to raise arguments or present evidence for the first time when they could reasonably

4  have been raised earlier in the litigation." (citing Kona Enters., Inc. v. Estate of Bishop,

5  229 F.3d 877, 890 (9th Cir. 2000))).

6          2.      **LTD Benefits**

7          Plaintiff also seeks an amended judgment clarifying that her LTD benefits should

8  be calculated based on her 2015 annual salary, which represents her Covered Earnings

9  pursuant to the Policy.  Pl.'s Mot. at 3 (docket no. 84).  Specifically, Plaintiff maintains

10 that her LTD benefits should be calculated based on a rate of 60% of her $104,524

11 Covered Earnings.  Id. at 4–5.  In support of her argument, Plaintiff provides her 2015

12 W-2 Form and her 2015 IRS 1040 Wage Statement.  Reynolds Decl. (docket no. 85);

13 W-2 Form (docket no. 85-1); IRS 1040 Wage Statement (docket no. 85-2).[1]  LINA

14 argues that "Plaintiff has failed to demonstrate (1) that all of her taxable income in 2015

15 originated from her employment at Affymetrix; (2) that the higher figure she advocates

16 for consists solely of her base annual salary (as opposed to bonuses, overtime, or other

17 taxable benefits); and (3) that her employer reported that figure to LINA."[2]  Def.'s Resp.

18 at 6 (docket no. 88).

19

20 _____

21 [1] Plaintiff also maintains that the $104,524 earnings is consistent with the certified earnings reported by
   the Social Security Administration.  Pl.'s Mot. at 4 (docket no. 84) (citing AR 1952).

22 [2] LINA also argues that "Plaintiff appears to be seeking . . . an advisory opinion" and points out that
   "Plaintiff never raised the issue of the calculation of her benefits at any point during the course of this

23

ORDER - 4

1    According to the Policy, Plaintiff's "Covered Earnings" are her "base annual

2  salary or estimated annual earnings based on a standard hourly rate, multiplied by 2080,

3  as reported by the Employer" to LINA.  AR 6.  Plaintiff's "Covered Earnings," however,

4  do not include "bonuses, overtime pay, special pay or any other form of extra

5  compensation."  Id.  Although it appears Plaintiff's taxable income in 2015 totaled

6  $104,524, Plaintiff has not established that the $104,524 was solely from her employment

7  with Affymetrix or that the $104,524 was her base salary without "bonuses, overtime

8  pay, special pay or any other form of extra compensation."  Because the record does not

9  contain conclusive evidence with respect to Plaintiff's Covered Earnings in 2015, and

10  because LINA has not issued a decision with respect to the LTD benefit amount, the

11  Court declines to decide this matter.  Chapin v. Prudential Ins. Co. of Am., No. 19-CV-

12  1256, 2021 WL 1090749 (W.D. Wash. Mar. 22, 2021) (remanding for appropriate

13  calculation of benefits because it would be premature for the Court to issue a decision

14  with respect to benefit amount where the plan administrator had not done so (citing

15  Reddick v. Metro. Life Ins. Co., No. 15-CV-2326, 2017 WL 1094048, at *4 (S.D. Cal.

16  Mar. 23, 2017))).  Thus, Plaintiff's motion to amend the judgment with respect to the

17  calculation of Plaintiff's LTD benefits is DENIED.  LINA, however, is DIRECTED to

18  calculate Plaintiff's LTD benefits according to the Policy.[3]

19  _____

20  years-long lawsuit, nor prior to filing her lawsuit at the administrative level."  Def.'s Resp. at 4–5 (docket no. 88).

21  [3] LINA notes that it "intends to verify Ms. Reynolds' Covered Earnings with the policyholder prior to

22  benefits being paid," see Downey Decl. at ¶ 9 (docket no. 89), which indicates that LINA intends to comply with the Policy.

23

**B.**   **Plaintiff's Motion for Prejudgment Interest and Attorney's Fees**

      **1.**   **Prejudgment Interest**

Plaintiff seeks prejudgment interest on unpaid benefits at a rate of 5.46% starting from October 6, 2020, the date LINA denied her claim for LTD benefits.  Pl.'s Mot. at 11–12 (docket no. 82) (citing AR 5976–81).  Although Plaintiff asserted a claim for prejudgment interest in her Second Amended Complaint, docket no. 24, and in her Opening Brief, docket no. 70, Plaintiff did not discuss why she is entitled to prejudgment interest.  In fact, Plaintiff's proposed order, which was filed with her Opening Brief, explicitly states that "Plaintiff shall have 21 days from the date of Judgment [to] petition for fees, costs, expenses and pre and post judgment interest."  Pl.'s Proposed Order at ¶ 3 (docket no. 70-1).  Nevertheless, LINA does not dispute that Plaintiff is entitled to prejudgment interest.  Def.'s Resp. (docket no. 86); Def.'s Resp. (docket no. 88).

The Court "may award prejudgment interest in ERISA cases to compensate a plaintiff for the loss she incurred as a result of the defendant's nonpayment of benefits."  Bingham v. Liberty Life Assurance Co. of Boston, 148 F. Supp. 3d 1159, 1168 (W.D. Wash. 2015) (citing Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 988 (9th Cir. 2001)).  "Whether to award prejudgment interest 'is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'"  Id. (citations omitted).  In general, "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate."  Id. (citations omitted).  The post-judgment rate in this matter is five and

1  forty-six hundredths of one percent (5.46%) per annum.  <u>See</u> Judgment (docket no. 81).

2  Thus, LINA is DIRECTED to pay prejudgment interest at a rate of 5.46% on unpaid LTD

3  benefits.

4      **2.**     **Attorney Fees**

5      In an ERISA action, the Court has discretion to award reasonable attorney fees and

6  costs to either party if the party seeking fees has achieved "some degree of success on the

7  merits."  <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242, 255 (2010) (quoting

8  <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 694 (1983)).  Plaintiff has achieved some

9  success on the merits.  <u>See</u> Order (docket no. 80).

10      **a.**     **The *Hummell* Factors**

11      Once the Court concludes that the claimant has satisfied the standard of success

12  set forth in <u>Hardt</u>, it must then consider the five factors outlined by the Ninth Circuit in

13  <u>Hummell v. S.E. Rykoff & Co.</u>, 634 F.2d 446 (9th Cir. 1980).  Those factors are

14      (1) the degree of the opposing parties' culpability or bad faith; (2) the ability
        of the opposing party to satisfy an award of fees; (3) whether an award of
15      fees against the opposing parties would deter others from acting under similar
        circumstances; (4) whether the parties requesting fees sought to benefit all
16      participants and beneficiaries of an ERISA plan or to resolve a significant
        legal question regarding ERISA; and (5) the relative merits of the parties'
17      positions.

18  <u>Id.</u> at 453; <u>see also</u> <u>Simonia v. Glendale Nissan/Infinity Disability Plan</u>, 608 F.3d 1118,

19  1119 (9th Cir. 2010).  When the Court applies these factors, it "must keep at the forefront

20  ERISA's remedial purposes that should be liberally construed in favor of protecting

21  participants in employee benefit plans."  <u>McElwaine v. US West, Inc.</u>, 176 F.3d 1167,

22

23

1  1172 (9th Cir. 1999).  "[A] successful ERISA participant should ordinarily recover an

2  attorney's fee unless special circumstances would render such an award unjust."  Id.

3      Plaintiff argues that she is entitled to fees and costs because (1) LINA "was

4  culpable" even though LINA did not operate in bad faith; (2) LINA has the ability to

5  satisfy an award of fees; (3) an award of fees "would warn potential defendants to

6  thoroughly investigate claims" and "encourage insurance companies to identify the

7  specific reasons for denying claims at the administrative level;" and (4) Plaintiff's

8  position was relatively more meritorious.  See Pl.'s Mot. at 5–7 (docket no. 82).  LINA

9  argues that (1) the first Hummell factor weighs in its favor because Plaintiff concedes

10 there was no bad faith; (2) an award of fees "would not act as a deterrent to others

11 because of the exceptional circumstances and facts of this case, which are unlikely to be

12 repeated;" (3) the fourth Hummell factor weighs in its favor "because the Plaintiff is not

13 benefiting all plan participants;" and (4) both its position and Plaintiff's position had

14 merit.  Def.'s Resp. at 2–3 (docket no. 86).

15     The Hummell factors do not require the Court to find that each factor weighs in

16 support of fees because the factors "reflect a balancing."  McElwaine, 176 F.3d at 1173.

17 As an initial matter, the Court did not find that LINA's actions rise to the level of bad

18 faith or culpability required under the first Hummell factor, see Order (docket no. 80), so

19 the first fact weighs against a fee award.  Second, LINA concedes that it has the ability to

20 satisfy an award of fees.  Third, although LINA did not act in bad faith, an award of fees

21 could encourage plan administrators to identify the specific reasons for denying coverage

22 at the administrative level.  Fourth, Plaintiff concedes that she did not seek to benefit all

23

ORDER - 8

1  plan participants.  Therefore, the fourth <u>Hummell</u> factor is neutral or weighs in LINA's

2  favor.  Fifth, although Plaintiff did succeed on the merits, both parties' positions had

3  merit.  Because both parties' positions had merit, and because LINA did not act in bad

4  faith, the principles of equity counsel in favor of reducing any fee award by a 10%

5  "haircut."  <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he

6  district court can impose a small reduction, no greater than 10 percent—a 'haircut'—

7  based on its exercise of discretion and without a more specific explanation.").

8      In sum, the Court concludes that the <u>Hummell</u> factors weigh in favor of awarding

9  Plaintiff reasonable attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1), with a

10  reduction in the fee award as described above.

11      **b.**     **<u>Reasonable Attorney Fees</u>**

12      In determining the reasonable amount of fees and costs to award, courts use a

13  hybrid lodestar/multiplier approach.  <u>McElwaine</u>, 176 F.3d at 1173.  The Court arrives at

14  the "lodestar" figure by multiplying the number of hours reasonably expended by a

15  reasonable hourly rate.  <u>See id.</u>  Additionally, "[t]he party seeking fees bears the burden

16  of documenting the hours expended in the litigation and must submit evidence supporting

17  those hours and the rates claimed."  <u>Welch v. Metro Life Ins. Co.</u>, 480 F.3d 942, 945–46

18  (9th Cir. 2007) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).

19      In the Ninth Circuit, "the determination of a reasonable hourly rate 'is not made by

20  reference to the rates actually charged by the prevailing party.'"  <u>Welch</u>, 480 F.3d at 946

21  (quoting <u>Mendenhall v. Nat'l Transp. Safety Bd.</u>, 213 F.3d 464, 471 (9th Cir. 2000)).

22  "Rather, billing rates should be established by reference to the fees that private attorneys

23

ORDER - 9

1    of an ability and reputation comparable to that of prevailing counsel charge their paying

2    clients for legal work of similar complexity." Id. (internal quotation omitted).

3    "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

4    community, and rate determinations in other cases, particularly those setting a rate for the

5    plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." United

6    Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (citing

7    Chalmers v. City of L.A., 796 F.2d 1205, 1214 (9th Cir. 1986)).

8         Plaintiff seeks $135,780 in attorney fees based on a $600 hourly rate and 226.3

9    hours.[4]  Pl.'s Reply at 5 (docket no. 90).  Plaintiff also seeks costs in the amount of

10   $2,286.08.[5]  Pl.'s Mot. at 2, 11 (docket no. 82).

11        LINA argues that Plaintiff's requested hourly rate is not reasonable.  Def.'s Resp.

12   at 4–8 (docket no. 86).  LINA proposes that the prevailing market rate in the Seattle area

13   is somewhere between $325 and $500 an hour for a single-plaintiff ERISA case.  The

14   Court agrees in part and finds that the prevailing market rate for a single-plaintiff ERISA

15   case is somewhere between $325 and $600 an hour.  See Principal Life Ins. Co. v. Hill,

16   No. C21-1716, 2022 WL 2718087 (W.D. Wash. July 13, 2022) ($325 per hour for

17   plaintiff's lead counsel); Cherry v. Prudential Life Ins. Co. of Am., No. C21-0027, 2022

18   WL 3925304, at *3–4 (W.D. Wash. Aug. 30, 2022) (in a single-plaintiff ERISA disability

19

20   _____

21   [4] Plaintiff's counsel states that he charges $652.50 for non-contingent fee work.  Fields Decl. at ¶ 8
     (docket no. 83).

22   [5] LINA does not contest the reasonableness of Plaintiff's costs.

23

1    case, the court awarded $600 per hour for an attorney who had been practicing since

2    1999, but concluded that a $500 hourly rate for another attorney was "excessive" and

3    reduced the rate to $475 per hour); <u>Bunger v. Unum Life Ins. Co. of Am.</u>, 231 F. Supp.

4    3d 865, 872 (W.D. Wash. 2017) (finding reasonable a $500 an hour rate for plaintiff's

5    counsel).  The Court concludes that the rate of $500 per hour is reasonable in this case.[6]

6    That rate is justified because Plaintiff's counsel has "practiced disability law in the

7    district courts and before the Ninth Circuit Court of Appeals for 30 years" and can

8    command that compensation.  <u>See</u> Fields Decl. at ¶ 5 (docket no. 83).

9           LINA also argues that the Court should reduce the number of hours.  Def.'s Resp.

10   at 8–10 (docket no. 86).  Courts generally limit hours in single-plaintiff ERISA cases to

11   200 hours.  <u>See</u> <u>Cherry</u>, 2022 WL 3925304, at *5 (approving 80.9 total hours); <u>Flaaen v.</u>

12   <u>Principal Life Ins. Co.</u>, No. C15-5899, 2017 WL 6527144, at *4–5 (W.D. Wash. Dec. 21,

13   2017) (reducing hours to 200 hours of reasonable work); <u>cf.</u> <u>Abrams v. Unum Life Ins.</u>

14   <u>Co. of Am.</u>, No. C21-0980, 2023 WL 2241996 (W.D. Wash. Feb. 27, 2023), <u>appeal</u>

15   <u>dismissed</u>, No. 23-35211, 2023 WL 4145439 (9th Cir. May 24, 2023) (noting that "courts

16   typically limit hours in single-plaintiff ERISA cases to 200 hours" but granting a motion

17   for attorneys' fees for a total of 303 hours because the facts of the "case were complex

18   and nuanced").  Although the instant case did not involve complex and nuanced facts, the

19

20   _____

21   [6] Although the Court previously approved a rate of $600 per hour, <u>see</u> Supplemental Judgment (docket no. 42), LINA did not dispute that rate because it was focused on setting aside the default judgment.
22   Def.'s Resp. at 5 n.3 (docket no. 86).

23

1    Court concludes that the 226.3 hours requested by Plaintiff is reasonable because it is not

2    significantly more than 200 hours.

3        Plaintiff, however, "double-billed for the mediation conference."  Def.'s Resp. at 9

4    (docket no. 86); Pl.'s Reply at 5 (docket no. 90).  In addition, LINA contends, and the

5    Court agrees, that Plaintiff should not recover attorney fees for 10.7 hours of post-

6    judgment tasks such as congratulating Plaintiff on the Court's decision or tasks related to

7    the motion to amend judgment.  Reilly Decl. at ¶ 8 (docket no. 87). After subtracting

8    from the total time requested 6 hours due to double-billing for mediation and 10.7 hours

9    for post-judgment tasks, the Court arrives at 209.6 hours.

10       The resulting lodestar amount of $94,320 reflects 188.64 hours[7] at a rate of $500

11   per hour, which the Court concludes is a reasonable attorney's fee.  The Court also

12   awards costs in the amount of $2,286.08.

13   **<u>Conclusion</u>**

14       For the foregoing reasons, the Court ORDERS:

15       (1)    Plaintiff's motion to amend judgment, docket no. 84, is DENIED.  The

16   Court declines to enter an amended judgment with respect to calculation of STD benefits

17   or LTD benefits.  LINA is DIRECTED to calculate Plaintiff's claim for LTD benefits

18   according to the Policy.  The Court retains jurisdiction of this matter in the event that

19   further disputes arise with respect to calculation of LTD benefits.

20

21   _____

22   [7] The granted hours reflect the 10% haircut discussed above.

23

ORDER - 12

1   (2)   Plaintiff's motion for prejudgment interest and attorney's fees and costs,

2   docket no. 82, is GRANTED in part and DENIED in part.  LINA is DIRECTED to pay

3   prejudgment interest at a rate of 5.46% per annum on unpaid LTD benefits from

4   October 6, 2020, until the date of the Judgment, October 6, 2023.  LINA is further

5   DIRECTED to pay attorney's fees in the amount of $94,320 and costs in the amount of

6   $2,286.08.

7   (3)   The Clerk is directed to enter a supplemental judgment consistent with this

8   Order and to send a copy of the Supplemental Judgment and this Order to all counsel of

9   record.

10   IT IS SO ORDERED.

11   Dated this 18th day of December, 2023.

13   

14   Thomas S. Zilly
    United States District Judge

ORDER - 13